## AFFIDAVIT IN SUPPORT OF
## APPLICATIONS FOR SEARCH WARRANTS

I, Meaghan Croke, having been duly sworn, state as follows:

1.     I have been a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), since May of 2020. I am a graduate of the ATF National Academy Special Agent Basic Training Program and the Federal Law Enforcement Training Center, Criminal Investigator Training Program. As a result of my training and experience as an ATF Special Agent, I am familiar with Federal criminal laws pertaining to firearms violations. As a Special Agent, I am also authorized to carry firearms, execute warrants, make arrests for offenses against the United States, and perform other such duties as authorized by law.

2.     While employed as a Special Agent, I have investigated violations of local, state, and federal criminal statutes; made arrests, prepared search and arrest warrant affidavits; interviewed defendants, witnesses, and informants; and seized currency, firearms, narcotics, and other evidence related to criminal investigations. I have experience and training in firearms and narcotics trafficking cases, gang investigations, and the utilization of informants and cooperating witnesses.

### *Purpose of this Affidavit*

3.     I submit this affidavit in support of applications for the issuance of search warrants for the following:

i)     A warrant to search 70/72 Osborn Street, Apartment 1, Providence RI, 02908, which is a white-colored multi-family type structure with a brown-colored roof. There are two entry doors at the front of the residence, the left side front door accesses the first-floor apartment. The number "70" appears directly to the right of the left-side door.

ii)     A warrant to search 70/72 Osborn Street, Apartment 3, Providence RI,

02908, which is a white-colored multi-family type structure with a brown colored roof. There are two entry doors at the front of the residence, the right-side front floor accesses the third-floor apartment, including any space, rooms, or attics that Apartment 3 has direct access too. The number "72" appears directly to the right of the right-side door.

iii)     A warrant to search 25 Chatham Street, Apartment 2, Providence RI, 02904 which is an off-white multi-family front home with a brown roof a front door that is red in color and accesses the apartment, including any space, room or attics to which Apartment 2 has direct and exclusive access. All premises referenced in (i) – (iii) shall hereafter be referred to as the "SUBJECT PREMISES."

iv)     A warrant to search the person of Rafael SORIANO (YOB: 1978).

v)      A warrant to search a 2009 black Honda CRV (VIN# JHLRE48749C004651) bearing RI registration "UA217," registered to Rafael SORIANO.

vi)     A warrant to search the cellular telephone assigned call number (401) 952-9884, which is believed to be Rafael SORIANO's cellular telephone.

vii)    A warrant to search the person of Lucas SORIANO (YOB: 1981).

viii)   A warrant to search a 2015 Acura TLX (VIN# 19UUB1F33FA005619) bearing RI Registration "PM149," registered to Lucas SORIANO. This vehicle and that listed in (v), above, shall hereafter be referred to as the "SUBJECT VEHICLES."

ix)     A warrant to search the cellular telephone assigned call number (401) 744-9705, which is believed to be Lucas SORIANO's cellular telephone. This cellular telephone and that listed in (vi), above, shall hereafter be referred to as the "SUBJECT PHONES."

4.     Based on the facts set forth in this affidavit, there is probable cause to believe that Lucas SORIANO (YOB: 1981) and his brother, Rafael SORIANO (YOB: 1978) are felons in possession of a firearm and/or ammunition in violation of 18 U.S.C. § 922(g)(1)(the SUBJECT OFFENSE) and further, probable cause exists to believe the items described more fully below and in Attachment B will be found in the locations set forth above and in Attachment A.

5.      The information in this affidavit comes from my personal observations and investigation, my training and experience, information obtained from other law enforcement agents with experience in the investigation of firearms crimes, and information obtained from other sources as specified in the body of this affidavit. The affidavit is intended to show that there is sufficient probable cause for the requested warrants and includes only those facts which I believe are necessary to establish probable cause for the issuance of the requested warrants.

6.      Since July 2022, ATF in conjunction with the United State Postal Inspection Service (hereinafter "USPIS"), have been investigating individuals who are believed to be using the United States Mail system in furtherance of violating federal firearm laws. ATF Agents have been focusing on individuals who are prohibited from possessing firearms, as well as individuals who are engaging in firearm-trafficking activities by illegally manufacturing and distributing Privately Made Firearms, more commonly known as "ghost guns."[1]

7.      PMFs are firearms without serial numbers and other manufacturer or importer markings, rendering them difficult to trace by law enforcement officials. These firearms can be finished and/or assembled with the aid of common household tools or specialized tools and equipment using gun-build kits or aggregated gun parts purchased online and elsewhere. These kits are commonly known as "buy build shoot" kits. ATF has been primarily focusing on the investigation of PMF's produced from 80 percent lower receivers or frames, known hereafter as the "80 Percent Frame." The "80 Percent Frame" is an unfinished frame that has been

---

[1] A Privately Made Firearm is "a firearm, including a frame or receiver, completed, assembled, or otherwise produced by a person other than a licensed manufacturer, and without a serial number placed by a licensed manufacturer at the time the firearm was produced.  The term shall not include a firearm identified and registered in the National Firearms Registration and Transfer Record pursuant to chapter 53, title 26, United States Code, or any firearm manufactured or made before October 22, 1968 (unless remanufactured after that date)."

advertised and sold as being 80 percent complete and can be easily finished and assembled into a frame or receiver and a fully functioning firearm. The "80 Percent Frame" is available and sold in both handgun and rifle configurations. An individual can purchase these unfinished frames or receivers with relative ease over the internet, bypassing regulatory requirements of the Gun Control Act (GCA) including background checks, recordkeeping, and manufacturers' markings.

8.      As of August 24, 2022, Final Rule 2021R-05F[2] became effective, which addressed the classification of partially complete (commonly referred to as "80%") frames or receivers that are sold, distributed, or possessed with the associated templates, jigs, molds, equipment, tools, instructions, guides. The rule clarifies that the definition of a "firearm" now includes a weapons-parts kit that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive. With the new rule in effect, the many products currently marketed and sold as unregulated kits ("buy build shoot" kits) and components are properly classified as "firearms" that are regulated under federal law. Additionally, the new rule, under section 27 CFR Part 478.12 defines a "frame"[3] and "receiver."[4]

9.      Additionally, a prohibited person may not possess such a kit if it is designed to or may be readily completed, assembled, restored, or otherwise converted to

---

[2] Final Rule 2021R-05F, found in 27 CFR Part 478, was signed by the United States Attorney General on April 11, 2022, was published in the Federal Register on April 26, 2022, and became effective on August 24, 2022, 120 days from the date it was published in the Federal Register. *See* https://www.ecfr.gov/current/title-27/chapter-II/subchapter-B/part-478?toc=1

[3] The term "frame" now means the part of a handgun or "variants" (also a defined term) using a handgun design, that provides housing or a structure for the sear or equivalent—that part that holds back the hammer, striker, bolt, or similar component prior to firing.

[4] The term "receiver" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants, that provides housing or a structure for the bolt, breechblock or other primary component designed to block or seal the breech prior to firing.

function as a frame or receiver and a fully functioning firearm. To determine whether a kit is so designed, or may readily be completed, assembled, restored or converted, ATF may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit.

10.     Under 18 U.S.C. § 922(g)(1), it is unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition, or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

11.     In July 2022, the USPIS used proprietary United States Postal Service databases to identify addresses believed to be associated with the purchase of firearm parts sent through the United States Mail. One of the addresses identified was 70 Osborn Street, Providence, RI 02908.

12.     70/72 Osborn Street is a three story three family dwelling with an apartment on each floor. According to Northeast Revaluation Group (nereval.com), the residence is owned by Milka Santana. The front left-side door has the number "70" to the right of it. I believe this door leads to the first-floor apartment that belongs to Milka Santana, the mother of Lucas and Rafael SORIANO. Utility queries show that Milka Santana is the individual that pays the monthly utilities at 70 Osborn Street, Apartment 1. I have seen Milka Santana utilize the front left-side door while coming and going from the residence.

13.     The front right-side door has the number "72" to the right of it. I believe this door leads to the third-floor apartment. A query for 72 Osborn Street Apartment 3 identifies Jolissa Torres as the individual who pays the utilities. According to

Winfacts, a Rhode Island Adult Correctional Institutions database, Jolissa Torres
is the longtime girlfriend of Rafael SORIANO. I have seen Torres utilize the
right-side door while coming and going from the residence. I have also seen
Torres operate a 2009 black Honda CRV that is registered to Rafael SORIANO.

14.  The second-floor apartment utilities query shows the utilities are under the name
Jose Garcia. I have seen Jose Garcia coming and going from the residence
numerous times; however, I have never seen any interaction between Garcia and
the SORIANO brothers. I do not believe Garcia plays any role in the
investigation.

15.  USPIS identified 70 Osborn Street, Providence, RI 02908 as potentially having
received packages from a company called MDX Arms. I viewed the public
website for MDX Arms, https://mdxarms.com, and learned that MDX Arms
sold 80% firearm frames, firearm build kits, as well as firearm parts and
accessories. A portion of the MDX Arms homepage is posted below:



16.  I reviewed the information provided by USPIS and learned that on June 2, 2022, a
package was delivered to 70 Osborn Street, Providence, RI 02908, addressed to

"Lucas SORIANO SANTANA." I noted that the weight of each package was listed as 2 pounds 4 ounces which, based upon training and experience in conjunction with conversations with other ATF investigators, was consistent with firearm parts and accessories.

17.     A query of 70 Osborn Street, Providence, RI 02908 in USPIS's database identified a number of retailers that specialize in the advertisement and sale of firearm parts, ammunition and firearm accessories as having shipped to that address. These identified companies included MDX Arms, MaxArmory, NDZ Performance, and Nashville Gun Shop. Orders to these retailers were placed in the name of Lucas SORIANO and Rafael SORIANO.

18.     I conducted a Driver's License query for Rafael SORIANO and Lucas SORIANO and learned that both individuals have an active Rhode Island Driver's License. Lucas SORIANO (License #: XXXX452) has a driver's license issue date of 6/07/2022 and the residential address and primary contact address listed was 70 Osborn Street, Floor 1, Providence RI 02908.  Rafael SORIANO (License #: XXXX627) has a driver's license  issue date of 1/15/2020 and the residential address and primary contact address listed was 70 Osborn Street, Floor 3, Providence, RI, 02908.  Numerous queries for Rafael SORIANO show Rafael uses both 70 Osborn Street, Apartment 3, and 72 Osborn Street, Apartment 3 as his address, which utility checks show is the same dwelling.

19.     I conducted a criminal history query of Lucas SORIANO and learned that he has been arrested on three prior occasions and has the following felony convictions:

- Robbery- 1st: Forcible Theft Armed with A Deadly Weapon
  Court Agency: NY030015J
  Court Case Number: 00621-2005
  Sentence: 12 years to serve, 5 years' probation

- Criminal Possession Loaded Firearm- 3rd Degree
  Court Agency: NY030015J
  Court Case Number: 04784-2002

Sentence: 2 years to serve

20.    I conducted a criminal history query of Rafael SORIANO and learned that he has been arrested on three prior occasions and has the following felony convictions:

- Robbery- 2nd: Aided by Another
  Court Agency: NY030015J
  Court Case Number: 9284-97
  Sentence: 3 years to serve

- Conspiracy to Distribute; Distribution of Methylenedioxymethamphetamine; Aiding and Abetting
  Agency: RI FBI
  Court Case Number: 1:10-cr-00129-WES-PAS-1
  Sentence: 15 months to serve, 3 years Supervised Release

21.    Thereafter, on August 5, 2022, in an effort to learn more information about the SORIANOs' order history from each of these companies, I obtained and served federal grand jury subpoenas upon Nashville Gun Shop, MDX Corporation, Maxsell Corporation, and NDZ Performance, related to purchases shipped to 70 and 72 Osborn Street Providence, RI 02908 in the names of Lucas or Rafael SORIANO. Each of the companies responded to the subpoenas, which I reviewed, and learned the following information:

*MDX Corp.*

22.    USPS records indicated that a package sent by MDX Corp. to Lucas SORIANO SANTANA at 70 Osborn Street, Apartment 1, Providence RI, 02908, shipping label no. 9410811298370040081330, was accepted on May 31, 2022.  The package weighed 2 pounds, 4 ounces, a weight consistent with 80% firearm frames, firearm build kits as well as firearm parts and accessories.

23.    A federal grand jury subpoena was served electronically upon MDX Corp., P.O. Box 3700 Parker, AZ 85344.  On August 20, 2022, I received information from the keeper of records of MDX Arms which included invoices and order details for

transactions shipped to 70 Osborn Street Providence RI, 02908 addressed to Lucas SORIANO.

24. Upon the review of information received from MDX Arms, I learned Lucas SORIANO provided telephone number 401-744-9705 as a contact number when placing various orders through the company's website.

25. Posted below are the details for Order Number: 1105482 that was processed on May 30, 2022:

- Polymer80 PF940SC -
  80% Textured Pistol Frame Kit for Glock G26/G27
  Frame Color: Black
  Quantity: 1
  Price: $129.99

- MDX Arms G26 V2 with RMR Cut Build Kit – No Frame
  Slide Color: FDE, Barrels: SS Non Threaded
  Quantity: 1
  Price: $250.00

26. The following is a screenshot of the ordered items as viewed on MDX Arms' website:





27.     Based upon training and experience, I know that the ordered items are all essential parts that one would need when building/modifying a firearm. I know that "G26" and "Glock G26/G27" are models of firearms produced by GLOCK Inc.[5] Further, I know that under existing federal law, the Polymer80 PF940SC 80% Textured Pistol Frame Kit for Glock G26/G27 is now considered a "firearm," and those with prior felony convictions, like the SORIANO brothers, are prohibited from possessing it.  I also know that Polymer80 frame kits are not manufactured in the State of Rhode Island and therefore, the Polymer80 frame kit delivered to Lucas SORIANO traveled in interstate commerce before arriving in Rhode Island.

28.     Based upon additional information I received from Postal Inspector Michael Maccarone regarding packages shipped to 70 Osborn Street, Apt. 1 Providence, RI 02908 since August of 2021, I was able to identify the sender on 9 of 70 packages delivered via USPS between August 2021 to July 2022. These senders

---

[5] Glock Ges.m.b.H. is a weapons manufacturer headquartered in Deutsch-Wagram, Austria.

included companies that distribute firearm parts and accessories. A number of the packages, including ones on which sender information could not be identified, were shipped through DHL Global Mail and Stamps.com via USPS. According to Postal Inspector Maccarone, DHL Global Mail and Stamps.com are often used by vendors of firearms, firearm parts, and accessories.

*Nashville Gun Shop*

29.     I was able to identify one package sent from "SDFFS, 1215 Antioch Pike, 37211" to "Rafael SORIANO" at 70 Osborn Street, Apartment 1, Providence RI, 02908, shipping label no: 9400111202557805188962, which was accepted on June 21, 2022. The package weighed 4 ounces. I noted that the weight of the packages was consistent with firearm parts and accessories.

30.      I queried the address, and learned that 1215 Antioch Pike, Nashville, TN 37211 is the location of Nashville Gun Shop that sells a variety of firearms/ firearms parts/ ammunition and other accessories. Upon visiting the store's website, I noted that the store's address posted on its website was consistent with the sender's address on the US Postal list. A screenshot of the Nashville Gun Shop website is posted below:



31.     A federal grand jury subpoena was served electronically upon Nashville Gun Shop, 1214 Antioch Pike Nashville, TN 37211. On August 16, 2022, I received from the keeper of records of Nashville Gun Shop information including invoices and order details for transactions shipped to 70 Osborn Street Providence RI, 02908 addressed to Rafael SORIANO.

32.     Upon the review of information received from Nashville Gun Shop, I learned Rafael SORIANO provided telephone number 401-952-9884 as a contact number when placing order number 25-08768-19931 on June 20, 2022. Furthermore, I queried the telephone number 401-952-9884 in various law enforcement databases and learned that the likely subscriber for telephone number 401-952-9884, is Rafael SORIANO, with an address of 70 Osborn Street Providence, RI 02908.

33.     Posted below are the details for Order Number: 25-08768-19931 that was processed on June 20, 2022:

- Pearce Grip GLOCK 26 27 33 39 Grip Extension PLUS PG-2733
  Quantity: 1
  Price: $9.95

- Glock 26 Genuine Magazine MF26010 9mm 10 Rd Mag
  Quantity: 1
  Price: $24.79

34.     A screenshot of the ordered items is posted below:


Pearce Grip GLOCK 26 27 33 39 GRIP Extensio PLUS PG-2733 SAME DAY FAST FREE SHIP
SKU: PG-2733


Glock 26 Genuine Magazine MF26010 9mm 10 Rd Mag SAME DAY FAST FREE SHIPPING
SKU: MF26010

### Maxsell Corporation (MaxArmory)

35.    I was also able to identify one package sent from MaxArmory, 6601 Lyons Road Ste D1, 33073, to "Lucas Soriano Santana" at 70 Osborn Street, Apartment 1, Providence RI, 02908, shipping label no. 9405511202557488407872. The package was accepted on July 12, 2022 and weighed 1 pound, 8 ounces. I noted that the weight of the packages was consistent with firearm parts and accessories.

36.    I viewed the MaxArmory website, https://maxarmory.com, and learned that MaxArmory specializes in blank guns and ammunition, airsoft guns, custom fake Badge and ID Cards, body armor, and tactical gear. A screenshot of the MaxArmory website is posted below:



37.    A federal grand jury subpoena  was served electronically upon Maxsell Corporation (MaxArmory) – 6601 Lyons Road, Suite D1 Coconut Creek, FL 33073. On August 15, 2022, I received information from the keeper of records for Maxsell Corporation including invoices, order details, and IP addresses for transactions shipped to 70 Osborn Street Providence RI, 02908 addressed to Lucas SORIANO.

38.   Upon the review of information received from Maxsell Corporation, I learned Lucas SORIANO provided telephone number 401-744-9705 as a contact number when placing various orders through the company's website.

39.   Posted below are the details for Order Number: 20300 that was processed on April 27, 2022:

- Zoraki 914 Fume Full Auto – Front Fire 9mm blank Firing Guns
  (Free box of ammo)
  Quantity: 1
  Price: $97.99

40.   From Maxsell Corporation's website, a screenshot of the ordered items is posted below:



41.   Posted below are the details for Order Number: 34998 that was processed on July 11, 2022:

- 9mm Blanks PAK Blank Ammo – 50 Rd Box
  Quantity: 1
  Price: $24.99

42.   From Maxsell Corporation's website, a screenshot of the ordered items is posted below:



**9mm Blanks PAK Blank Ammo - 50 Rd Box**

Maxarmory

**$24**⁹⁹ $34⁹⁹  SAVE $10  ★★★★★ 13 reviews

Quantity

| 1 |

🛒 Add to Cart

- Blank Ammo DOES NOT WORK WITH REAL GUNS!

If you need assistance, please call us at 954-571-2121

*NDZ Performance*

43.  I was able to identify one package sent from NDZ Performance located at 1068 N Farms Rd, 06492 to "Rafael SORIANO," 70 Osborn Street, Providence, RI, 02908, shipping label no. 9400111202557448097133, which was accepted on July 15, 2022, weighing 2 ounces. I noted that the weight of the packages was consistent with firearm parts and accessories.

44.  I viewed the NDZ Performance website, https://www.ndzperformance.com, and learned that NDZ Performance specializes in "CUSTOM FIREARMS UPGRADES, ACCESSORIES & EDC GEAR," and is "always developing new aftermarket parts for major brands."

45.  A screenshot of the NDZ Performance website is posted below:



46.     A federal grand jury subpoena was served electronically upon NDZ Performance – 1068 N. Farms Road Building 2, Suite A, Wallingford, CT 06492. On August 22, 2022, I received information from the keeper of records of NDZ Performance including invoices and order details for transactions shipped to 70 Osborn Street, Providence, RI, 02908 addressed to Rafael SORIANO.

47.     Posted below are the details for Order Number: 13-08863-52560 that was processed on July 14, 2022:

- Grip Slug Plug for Glock 26 27 33 Gen 4 P8
  Quantity: 1
  Price: $7.99

48.     I visited the website of NDZ Performance and observed this product, a screenshot of which is posted below:



**NICS INQUIRY**

49.     On July 28, 2022, I queried Lucas SORIANO in the ATF National Instant Criminal Background Check System (NICS) Referral (ANR)[6] system with

---

[6] The NICS conducts background checks on people who want to own a firearm or explosive, as required by law. *See* https://www.fbi.gov/how-we-can-help-you/need-an-fbi-service-or-more-information/nics

16

positive results. According to ANR, on June 26, 2022, Lucas SORIANO traveled to Big Bear Hunting and Fishing, a federal firearms licensee, located at 401 Putnam Pike Chepachet, RI 02814 and completed firearm transaction paperwork in order to attempt to purchase a firearm. Lucas SORIANO's firearm application was denied through FBI NICS on June 30, 2022.

50.    On July 28, 2022, I contacted Big Bear Hunting and Fishing and spoke with a store employee, whose initials were "J.R." I identified myself to the employee and requested the firearm transaction paperwork that Lucas SORIANO had completed on June 26, 2022. J.R. told me that Lucas SORIANO came back to the store a few days after filling out his firearm application and was advised that his application had been denied. J.R. told me that Lucas SORIANO did not seem surprised by his firearm denial and told J.R. that he had been in trouble in the past and was in the process of getting the reason for his denial cleared up. I gave my contact information to J.R. and advised him to email me ATF Form 4473,[7] the State Application, and any invoices related to the transaction as soon as possible.

51.    On July 29, 2022 at 11:14 a.m., I received an email from Big Bear Hunting and Fishing with the requested paperwork. Upon reviewing the ATF Form 4473 and invoice, I learned that Lucas SORIANO had attempted to purchase an SAR K-12 Sport 9mm handgun on June 26, 2022.  The invoice listed Lucas SORIANO's telephone number as 401-744-9705.

52.    On August 1, 2022, I traveled to Big Bear Hunting and Fishing, identified myself, and asked to speak with the male employee with whom I had spoken on July 28, 2022.  J.R. identified himself and said that he was the individual with whom I

---

[7] A Firearms Transaction Record, or ATF Form 4473, is a six-page form prescribed by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) required to be completed when a person proposes to purchase a firearm from a Federal Firearms License (FFL) holder, such as a gun dealer. Among other things, the form asks potential purchasers for information designed to determine whether they are prohibited from possessing a firearm under 18 U.S.C. § 922(g) such as whether they have been convicted in any court of a crime punishable by imprisonment for a term exceeding one year. *See* § 922(g)(1).

had spoken on the phone and that he was the store employee who had contact with Lucas SORIANO.

53.  J.R. reiterated that upon Lucas SORIANO learning about his firearms application being denied, SORIANO did not seem surprised and that he wanted the NICS Transaction Number.

54.  I noted that Lucas SORIANO's address on ATF Form 4473 as well as the Big Bear Hunting and Fishing invoice was 70 Osborn Street Providence RI, 02908, which is consistent with the address on Lucas SORIANO's Driver's License and where he has been receiving packages. I also noted that Lucas SORIANO had answered "No" on question 21c on ATF Form 4473 when asked if he had ever been convicted in any court of a felony.

55.  While conducting surveillance of 70 Osborn Street, I observed both Lucas and Rafael frequenting the residence. Both Lucas and Rafael SORIANO are prohibited from purchasing and/or possessing firearms. Over the past several months, both prohibited individuals have made numerous purchases from websites that sell firearm "buy-build-shoot" kits, parts, and accessories and have been getting the packages shipped to 70 Osborn Street. It is unknown if one or both brothers possess a firearm or, if they do, where it is being stored.

*Execution of Federal Search Warrant for SORIANOS' Cellphone Geolocation*

56.  On October 21, 2022, United States Magistrate Judge Patricia A. Sullivan signed a search warrant authorizing me to obtain location data concerning T-Mobile cellular telephone assigned call number 401-744-9705 for a period of thirty days, believed to be the telephone number associated with Lucas SORIANO's cellular phone.

57.  On October 21, 2022, I provided a copy of the warrant to the service provider T-Mobile who began sending data on October 21, 2022. I, along with Special Agent

Jardin and ATF Task Force Officer Tesseris, began monitoring and analyzing the data received from T-Mobile.

58.     Also pursuant to the warrant, on October 21, 2022, I received subscriber information associated with cellular telephone number 401-744-9705 from T-Mobile. I noted the subscriber's name and address for the telephone number came back to "Luis F Guzman Garcia" (YOB: 1997) of 25 Chatham Street in Providence RI 02904.

59.     I surveilled that address at 6:45 a.m. on October 24, 2022, and observed the names "Luis Guzman Garcia" and "Yaritza Garcia" printed on one of the mailboxes to the right of the front door. Refer to picture posted below. According to law enforcement databases, Lucas Guzman Garcia and Yaritza Garcia are listed as first-degree relatives.



60.     Through previous traffic stops and discussions with other detectives, I know
        Yaritza Garcia (YOB: 1994) to be associated with Lucas SORIANO.

61.     At approximately 9:05 a.m. on October 24, 2022, I observed a black SUV bearing
        Rhode Island registration "1IZ281" pull out of the driveway of 25 Chatham Street
        and proceed down Chatham Street towards Silver Springs Street. Thereafter, at
        approximately 9:25 a.m., I observed a male – whom I was able to identify as
        Lucas SORIANO - exit the front door of the residence and proceed to smoke
        what appeared to be a cigarette. At approximately 9:30 a.m., I observed the same
        black SUV return and pull into the driveway. Moments later, I observed Yaritza
        Garcia walk around to the front of the residence to where Lucas SORIANO was
        smoking. Approximately 10 minutes later, Lucas SORIANO entered the
        residence.

62.     At the time of this surveillance, I noted the geolocation pings for telephone
        number 401-744-9705 to be consistent with the target, Lucas SORIANO, being in
        the vicinity of 25 Chatham Street in Providence, RI 02904.

63.     On October 25, 2022 at approximately 8:00 a.m., I, along with ATF Special Agent
        Justin Delaney, conducted surveillance of 25 Chatham Street, Providence RI,
        02904.

64.     I  observed the subject vehicle, a silver Acura TLX bearing Rhode Island
        registration PM149, parked on the street in front of 25 Chatham Street. Refer to
        image posted below. Based upon previous surveillance and database queries, I
        know this Acura TLX to be registered to Lucas SORIANO. I have also seen Lucas
        SORIANO operate this vehicle on numerous occasions.



65.     At the time of this surveillance, I noted the geolocation pings for call number 401-744-9705 to be consistent with the target, Lucas SORIANO, being in the vicinity of 25 Chatham Street in Providence, RI 02904.

66.     On October 27, 2022, I received confirmation from Postal Inspector Maccarone that mail in the name of Yaritza Garcia is delivered to "25 Chatham St #2." I know this address to be consistent with Luis Guzman Garcia's driver's license that lists his residence and primary contact address as 25 Chatham Street Apartment 2, Providence, RI 02904.

67.     While conducting surveillance of 25 Chatham Street on October 31, 2022, at approximately 10:00 a.m., I observed Lucas SORIANO's  silver Acura TLX bearing Rhode Island registration PM149 parked on the street in front of the residence. Refer to image posted below.



68.     Also during this surveillance, at approximately 11:00 a.m., I drove down Chatham Street toward Silver Spring Street and, while driving by 25 Chatham Street, I saw Lucas SORIANO sitting on the front steps of the residence which lead to the front door.

69.     At the time of surveillance, I noted the geolocation data for call number 401-744-9705 to be consistent with the target, Lucas SORIANO, being in the vicinity of 25 Chatham Street in Providence.

70.     I have monitored and reviewed the geolocation data for call number 401-744-9705 on several occasions and noted Lucas SORIANO's location during late night and early morning hours to be in the vicinity of 25 Chatham Street in Providence. This is significant because I know location data generated during these hours is indicative of where an individual stays at night.

71.     On October 21, 2022, authorization was granted by United States Magistrate Judge Sullivan to obtain 30 days of location data relating to Verizon cellular telephone assigned call number 401-952-9884, believed to be the telephone number associated with Rafael SORIANO's cellular phone.

72.     After receiving the warrant on October 24, 2022, Verizon began sending data on October 26, 2022 that I, along with Special Agent Jardin and ATF Task Force Officer Tesseris, began monitoring and analyzing. In doing so, we noted that the geolocation data for Rafael SORIANO's telephone number, 401-952-9884, was consistent with Rafael SORIANO being in the vicinity of 70/72 Osborn Street in Providence RI, 02908.

73.     On October 27, 2022, I conducted surveillance of 70/72 Osborn Street in Providence and, at approximately 11:00 a.m., observed a 2009 black Honda CRV Rhode Island registration UA217, registered to Rafael SORIANO, parked  in the driveway of the residence. At that time, I noted that the geolocation data for call number 401-952-9884 to be consistent with the target, Rafael SORIANO, being in the vicinity of the residence. Surveillance concluded shortly after.

74.     I have seen Rafael SORIANO's black Honda CRV coming out of and going into the driveway of 70/72 Osborn Street on numerous occasions.

75.     I have also monitored and reviewed the geolocation data for Rafael SORIANO's cell phone number, 401-952-9884, on several occasions and have noted Rafael SORIANO's location during late night and early morning hours to be in the vicinity of 70/72 Osborn Street in Providence.

Again, this is significant because location data generated during these hours is indicative of where a person stays at night.

### *Probable Cause to Believe Lucas and Rafael SORIANO*
### *Possess one or more Firearms and Ammunition.*

76.    Several of the identified orders discussed above included essential components (firearm parts/accessories, and 80 Percent Frames) that one would need to assemble fully functioning firearms and, based upon training and experience and through conversations with senior agents, these components serve no standalone purpose or value if not part of a firearm build. Additionally, the firearm accessories that were ordered, such as "grip extensions" and ammunition "magazines" are useless unless used with a firearm or ammunition, respectively. Consequently, based upon the identifiable firearm parts and build kits that were purchased and shipped to 70/72 Osborn Street, Providence RI, 02908, in the names of both Lucas and Rafael SORIANO, there is probable cause to believe that Lucas and Rafael SORIANO unlawfully manufactured and are in possession of at least one firearm. Further, based upon training, experience, common sense, and their order history, in addition to at least one firearm, there is also probable cause to believe that the SORIANOs also possess ammunition for use in their firearm(s).

77.    Based upon the foregoing, I respectfully submit there is probable cause to believe that Lucas and Rafael SORIANO, both of whom have previously been convicted of a felony punishable by imprisonment for more than one year, possessed and currently possess at least one firearm and/or ammunition in violation of 18 U.S.C. § 922(g)(1) (Possession or Receipt of a Firearm or Ammunition by a Prohibited Person).

### *70/72 Osborn Street*

78.     There is probable cause to believe that Rafael SORIANO resides at 70/72 Osborn
        Street, Apartment 3, because, according to driver's license and vehicle
        registration records maintained by the Rhode Island Department of Motor
        Vehicles, Rafael SORIANO resides at 70/72 Osborn Street Providence, RI, 02908.
        Further, this fact has been corroborated by physical surveillance of 70/72 Osborn
        Street and review of geolocation data relating to the telephone number
        associated with Rafael SORIANO's cellular phone.

79.     There is probable cause to believe that Milka Santana, Rafael and Lucas
        SORIANO's mother, resides at 70/72 Osborn Street, Apartment 1, because,
        according to driver's license and vehicle registration records maintained by the
        Rhode Island Department of Motor Vehicles, Milka Santana resides at 70/72
        Osborn Street, Providence RI, 02908.  Utility queries show that Milka Santana is
        the individual that pays the monthly utilities at 70 Osborn Street, Apartment 1,
        and surveillance has established that Milka Santana uses the door for Apartment
        1 while coming and going from the residence.

80.     Shipping information from firearm-parts vendors obtained via federal grand jury
        subpoenas shows that Lucas SORIANO had packages delivered to 70/72 Osborn
        Street, Apartment 1, from both MDX Arms and Maxsell Corporation. Similarly,
        shipping information from firearm-parts vendors obtained via federal grand jury
        subpoenas shows that Rafael SORIANO had packages delivered to 70/72 Osborn
        Street, Apartment 1, from both Nashville Gun Shop and NDZ Performance.

81.     Permission is therefore sought to search both the apartments of both Milka
        Santana 70/72 Osborn Street, Apartment 1, Providence RI, 02908 and Rafael
        SORIANO, 70/72 Osborn Street, Apartment 3, Providence RI, 02908. Both Rafael
        and Lucas SORIANO had firearms and firearm parts and accessories shipped to
        70/72 Osborn Street, Apartment 1, giving reason to believe that these individuals

use their mother's address to receive shipped firearms and firearm parts and accessories and may also use that address as a location at which to store said firearms or firearm parts and accessories before retrieving them or simply as a means of hiding them from law enforcement. Additionally, probable cause exists to believe that firearms, firearms parts and accessories, or ammunition will be found in Rafael SORIANO's apartment because he purchased firearm parts and accessories which have no standalone use or value unless used in conjunction with an actual firearm. Although his online purchases were shipped to his mother's address, he was the online purchaser and, consequently, items that he purchased may be stored in his apartment, in his vehicle [a 2009 Black Honda CRV (VIN # JHLRE48749C004651) bearing RI registration "UA217" registered to Rafael SORIANO], or on his person.

### *25 Chatham Street Apartment 2*

82.    There is probable cause to believe that Lucas SORIANO resides at 25 Chatham Street, Apartment 2, because physical surveillance, cellular phone geolocation data, and cellular phone subscriber information have established his past and ongoing presence at that location. Additionally, probable cause exists to believe that firearms, firearms parts and accessories, or ammunition will be found at 25 Chatham Street, Apartment 2, the address at which Lucas SORIANO's resides, since he purchased firearm parts and accessories which have no standalone use or value unless used in conjunction with an actual firearm. Although his online purchases were shipped to his mother's address, he was the online purchaser and, consequently, items that he purchased may be stored in his residence, in his vehicle [a 2015 Silver Acura TLX (VIN# 19UUB1F33FA005619) bearing RI registration "PM149," registered to Lucas SORIANO], or on his person.

### *Probable Cause to Search*

83.    Authorization is sought to search the SUBJECT PREMISES and SUBJECT

VEHICLES and seize the following:

a.  Evidence concerning occupancy or ownership of the SUBJECT
PREMISES and SUBJECT VEHICLES , including without limitation
utility and telephone bills and receipts, mail envelopes, addressed
correspondence, personal identification documents, rental agreements,
photographs, property acquisition records;

b.  Ammunition, firearms, PMF's, 80 Percent Frames or Lower Receivers,
slides, slide parts, firearm magazines, optical sights, barrels, threaded
barrels, triggers, lower parts kits, upper parts kits, tools, Dremel tools,
drilling equipment, templates, jigs, molds, instruction guides,
silencers, Glock switches, firearm and ammunition cases, holsters,
containers or packaging materials, and other evidence of unlawful
possession of firearms and ammunition because as set forth in this
affidavit there is probable cause to believe that Lucas SORIANO and
Rafael SORIANO are currently in possession of firearms, ammunition,
and firearm parts/accessories which may be stored at SUBJECT
PREMISES or in SUBJECT VEHICLES . Based upon training and
experience and through conversations with senior agents, individuals
in possession of firearms and ammunition commonly store them in
their place of residence or in vehicles or outbuildings located on the
curtilage of their residence or carry them on their person;

c.  Records or documents pertaining to United States postal and private
package delivery services, including bills, receipts, containers, and
packages indicating the purchase of firearm build kits, ammunition,
and firearm parts/accessories because as set forth in this affidavit there
is probable cause Lucas SORIANO and Rafael SORIANO are in
possession of these records or documents, as all items identified
including firearm build kits/firearm parts and ammunition were

shipped across state lines into the state of Rhode Island and directly to 70/72 Osborn Street in Providence RI using the United States Mail system. Based upon training and experience individuals will often maintain these records and documents from such purchases in their residences. Additionally, firearm build kits/firearm parts and accessories and ammunition are often shipped in packages via private package delivery services such as Federal Express or the United Parcel Service.

d.  Financial records and methods of purchase including credit card statements, receipts, account statements, credit cards and debit cards;

e.  Cellular or computer devices including the SUBEJCT PHONES, because such devices are commonly kept by users in their residence. The SUBEJCT PHONES were used as a means of contact on all the purchases of firearm build kits/firearm parts and accessories and ammunition noted in this affidavit. Additionally based upon training and experience, I know that individuals engaged in the unlawful manufacturing, possession, and trafficking of firearms and ammunition often use their computers or cellular telephones to order firearm parts, build kits, accessories, and ammunition, photograph the firearms and ammunition in their possession, and contact prospective purchasers of their firearms and ammunition to further illicit firearms trade. Also based upon training and experience, I know that individuals who engage in unlawful firearms trafficking frequently communicate with prospective sellers or buyers via cellular telephones either by text messages or telephone calls, and cellular devices retain evidence of such communications long after conversation or communication has occurred.

84.     Additionally, authorization is sought to search the person of both

28

Rafael SORIANO and Lucas SORIANO because I know from common sense, everyday experience, and my law enforcement training that cellular telephones, firearms and ammunition are often kept on the person of the owner of such items and materials.

### Search of Electronic Devices

85.   Authorization is sought to seize electronic devices, such as computers and the SUBEJCT PHONES, and search for and seize text messages, messaging records, photographs and videos, GPS data, social media applications, electronic mail, contact lists, toll records, banking and notation applications, and web browsing data because such data is commonly maintained on cellular telephones and in this case, there is probable cause to believe that such data will contain evidence of Lucas SORIANO and Rafael SORIANO's unlawful receipt and possession of firearms and/or ammunition.

86.   Permission is also sought to perform the search of said electronic devices off premises, if necessary. As grounds therefore, your affiant submits that the searches of electronic devices like a computer or the SUBEJCT PHONES, can be complicated due to the nature of electronic or computer forensics and, often times, a comprehensive search of such electronic devices is not possible on scene because of the complicated nature of forensic search methodology. Computer hardware (which can include cellular telephones), computer software, records, documents and materials, computer related documentation, passwords, and data security devices may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits or evidence of crime and/or (2) the objects may have been used to collect and store information about crimes in the form of electronic

data.

87.    Based upon your affiant's knowledge, training and experience as
       well as on consultations with law enforcement officers in the area of
       computer and cellular forensics and investigations, it is known that
       searching and seizing information from computers and cell phones
       often requires agents to seize most or all electronic storage devices,
       along with related peripherals, to be searched later by a qualified
       computer expert in a laboratory or other controlled environment.
       This is true because of the following:

       i.    **Volume of Evidence.** Cell phones and computer
             storage devices, like hard disks, diskettes, tapes and laser
             disks, can store the equivalent of thousands of pages of
             information. Additionally, a suspect may try to conceal
             criminal evidence; he or she may store it in random order with
             deceptive file names. This may require searching authorities to
             examine all the stored data to determine which particular files
             are evidence or instrumentalities of a crime. This sorting
             process may take weeks or months depending on  the volume
             of data stored and it would be impractical to attempt this kind
             of data search on site.

       ii.   **Technical Requirements**. Searching cell phones or
             computer systems for criminal evidence is a highly technical
             process requiring expert skill and a properly controlled
             environment. The vast array of computer hardware and
             software available requires even computer experts to
             specialize in some systems and applications, making it
             difficult to know before a search which expert is qualified to
             analyze the system and its data. Data search protocols are
             exacting scientific procedures designed to protect the integrity

of the evidence and to recover even "hidden", erased, compressed, password-protected or encrypted files. Computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction, both from external sources or from destructive code imbedded in the system, such as a "booby trap," necessitating a controlled environment for complete and accurate analysis. Additionally, the nature of computer forensics is extremely time-consuming process which can take weeks or months.

88.   Searching digital information for evidence or instrumentalities of crime commonly requires seizure of most or all of a computer system's input/output peripheral devices, related software, documentation and data security devices, including passwords, so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. This is true because of the following:

   i.   The peripheral devices, which allow users to enter or retrieve data from the storage devices, vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output (I/O) devices in order to read the data on the system. It is important that the analysts be able to properly reconfigure the system as it now operates in order to accurately retrieve the evidence listed above.

   ii.   Additionally, the analyst needs the relevant system software - operating systems, interfaces and hardware drivers, any application software which may have been used to create the data, whether

stored on hard drives or external media, as well as related instruction manuals or other documentation and data security devices.

iii.   In order to fully retrieve data from a computer system, the computer forensic analyst needs all or most of a computer system's equipment, and may be required to seize hardware, peripherals, software, documentation, security devices and passwords and run that data in its native environment in order to identify relevant evidence most effectively. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create or display the data (whether stored on hard drives or on external media). Instruction manuals for any hardware and software, and passwords, are also helpful to retrieve data/information.

## *BIOMETRIC ACCESS TO DEVICES*

89.   This warrant permits law enforcement to compel Lucas SORIANO and Rafael SORIANO to unlock any electronic devices requiring biometric access subject to seizure pursuant to this warrant.  The grounds for this request are as follows:

i.   I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices and laptops,

32

offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners, facial recognition features and iris recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

ii. If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device. The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

iii. If a device is equipped with a facial-recognition feature, a user may enable the ability to unlock the device through his or her face. For example, this feature is available on certain Android devices and is called "Trusted Face." During the Trusted Face registration process, the user holds the device in front of his or her face. The device's front-facing camera then analyzes and records data based on the user's facial characteristics. The device can then be unlocked if the front-facing camera detects a face with characteristics that match those of the registered face.

Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Trusted Face.

iv.   If a device is equipped with an iris-recognition feature, a user may enable the ability to unlock the device with his or her irises.  For example, on certain Microsoft devices, this feature is called "Windows Hello."  During the Windows Hello registration, a user registers his or her irises by holding the device in front of his or her face.  The device then directs an infrared light toward the user's face and activates an infrared-sensitive camera to record data based on patterns within the user's irises.  The device can then be unlocked if the infrared-sensitive camera detects the registered irises.  Iris-recognition features found on devices produced by other manufacturers have different names but operate similarly to Windows Hello.

v.   In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password.  Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents.  This is particularly true when the users of a device are engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

vi.   As discussed in this Affidavit, your Affiant has reason to believe that one or more digital devices will be found

34

during the search.  The passcode or password that would unlock electronic devices subject to search under this warrant currently is not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the SUBEJCT PHONES or other devices, making the use of biometric features necessary to the execution of the search authorized by this warrant.

vii.   I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time. For example, Apple devices cannot be unlocked using Touch ID when: (1) more than 48 hours has elapsed since the device was last unlocked; or (2) when the device has not been unlocked using a fingerprint for 8 hours and the passcode or password has not been entered in the last 6 days. Similarly, certain Android devices cannot be unlocked with Trusted Face if the device has remained inactive for four hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

viii. Due to the foregoing, if law enforcement personnel

encounter the SUBEJCT PHONES or any electronic devices that are subject to seizure pursuant to this warrant and may be unlocked using one of the aforementioned biometric features, this warrant permits law enforcement personnel to: (1) press or swipe the fingers (including thumbs) of Lucas SORIANO and Rafael SORIANO to the fingerprint scanner of any electronic devices found at 70/72 Osborn Street Apartment 3 and 25 Chatham Street Apartment 2 or in the SUJECT VEHICLES; (2) hold the SUBEJCT PHONES or other electronic devices found at said location in front of the face of  Lucas SORIANO and Rafael SORIANO and activate the facial recognition feature; and/or (3) hold the SUBEJCT PHONES or other electronic devices found at said location in front of the face of Lucas SORIANO and Rafael SORIANO and activate the iris recognition feature, for the purpose of attempting to unlock the devices in order to search the contents as authorized by this warrant.

ix.  The proposed warrant does not authorize law enforcement to compel Lucas SORIANO and Rafael SORIANO to state or otherwise provide the password or any other means that may be used to unlock or access the SUBEJCT PHONES or other electronic devices. Moreover, the proposed warrant does not authorize law enforcement to compel Lucas SORIANO and Rafael SORIANO to identify the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access said devices.

## **CONCLUSION**

Based on the above, I believe that there is probable cause to believe that Lucas SORIANO and Rafael SORIANO have and are committing the SUBJECT OFFENSE set forth above and that evidence, fruits, and instrumentalities of the SUBJECT OFFENSE will be found in the places set forth in Attachment A, and permission is sought to search in those places for the items listed in Attachment B. Furthermore, permission is sought to seize and conduct off-premises forensic searches of seized electronic devices due to the complexities of such searches, as described above.

*Meaghan Croke*

Meaghan Croke Special Agent
Bureau of Alcohol, Tobacco, Firearms, and
Explosives.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P.  4.1
by:
_____.
        (specify reliable electronic means)


_____            _____
Date                             Judge's signature


_____            _____
City and State                   U.S. Magistrate Judge

37

<u>**ATTACHMENT A**</u>

**DESCRIPTION OF LOCATIONS TO BE SEARCHED**

i)      70/72 Osborn Street, Apartment 1, Providence RI, 02908, which is a white-colored multi-family type structure with a brown-colored roof. There are two entry doors at the front of the residence - the left side front door accesses the first-floor apartment. The number "70" appears to the right of the left-side door. (SUBJECT PREMISES)

ii)     70/72 Osborn Street, Apartment 3, Providence RI, 02908, which is a white-colored multi-family type structure with a brown colored roof. There are two entry doors at the front of the residence - right-side front floor accesses the third-floor apartment, including any space, rooms, or attics that Apartment 3 has direct access too. The number "72" appears to the right of the right-side door. (SUBJECT PREMISES)

iii)    25 Chatham Street, Apartment 2, Providence RI, 02904, which is an off-white multi-family home with a brown roof a front door that is red in color and accesses the apartment, including any space, rooms, or attics to which Apartment 2 has direct and exclusive access. (SUBJECT PREMISES)

iv)     A  2009 black Honda CRV bearing RI registration UA217 (VIN # JHLRE48749C004651). (SUBJECT VEHICLE)

v)      The person of Rafael SORIANO (YOB: 1978)

vi)     The cellular telephone assigned call number (401) 952-9884, which is believed to be Rafael SORIANO's cellular telephone. (SUBJECT PHONE)

vii)    A 2015 Acura TLX bearing RI registration "PM149" (VIN # 19UUB1F33FA005619) (SUBJECT VEHICLE)

viii)   The person of Lucas SORIANO (YOB: 1981)

ix)     The cellular telephone assigned call number (401) 744-9705, which is believed to be Lucas SORIANO's cellular telephone. (SUBJECT PHONE)

## ATTACHMENT B

## ITEMS TO BE SEIZED

I.   All records, in whatever form, and tangible objects that constitutes evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 922(g)(1), including:

    a.   Evidence concerning occupancy or ownership of the SUBEJCT PREMISES or SUBJECT VEHICLES including, without limitation, utility and telephone bills and receipts, mail envelopes, addressed correspondence, personal identification documents, rental agreements, photographs, property acquisition records;

    b.   Ammunition, firearms, PMF's, 80 Percent Frames or Lower Receivers, slides, slide parts, firearm magazines, optical sights, barrels, threaded barrels, triggers, lower parts kits, upper parts kits, tools, Dremel tools, drilling equipment, templates, jigs, molds, instruction guides, silencers, Glock switches, firearm and ammunition cases, holsters, containers or packaging materials, and other evidence of unlawful possession of firearms and ammunition because as set forth in this affidavit there is probable cause to believe that Lucas SORIANO and Rafael SORIANO are currently in possession of firearms, ammunition, and firearm parts/accessories stored at SUBJECT PREMISES, in SUBJECT VEHICLES, or on their person. Based upon training and experience and through conversations with senior agents, individuals in possession of firearms and ammunition commonly carry them on their person or keep or store them in vehicle or their place of residence;

    c.   Records or documents in any form pertaining to United States postal and private package delivery services, receipts, containers, and packages indicating the purchase of firearm build kits, ammunition, and firearm parts/accessories because as set forth in this affidavit there is probable cause Lucas SORIANO and Rafael SORIANO are in possession of these records or documents, as all items identified including firearm build

kits/firearm parts and ammunition were shipped across state lines into the state of Rhode Island to 70/72 Osborn Street, Apartment 1, Providence, RI, using the United States Mail system. Based upon training and experience individuals will often maintain these records and documents from such purchases in their residences and/or on their cellular phones. Additionally, firearm build kits/firearm parts and accessories and ammunition are often shipped in packages via private package delivery services such as Federal Express or the United Parcel Service.

d. Financial records and methods of purchase including credit card statements, receipts, account statements, credit cards and debit cards;

e. Contact lists of suspected purchasers of firearms, ledgers or notes tracking description firearms and ammunition sold, amount sold, and evidence of where the transaction may have occurred in addition to evidence, whether physical or electronic, of proceeds derived from the illicit manufacturing and sale of PMF's.

f. Cellular or computer devices including the SUBEJCT PHONES, because such devices are commonly kept by users in their residence. The SUBEJCT PHONES were used as a means of contact on all the purchases of firearm build kits/firearm parts and accessories and ammunition noted in this affidavit. Additionally based upon training and experience, I know that individuals engaged in the unlawful manufacturing, possession, and trafficking of firearms and ammunition often use their computers or cellular telephones to order firearm parts, build kits, accessories, and ammunition, photograph the firearms and ammunition in their possession, and contact prospective purchasers of their firearms and ammunition to further illicit firearms trade. Also based upon training and experience, I know that individuals who engage in unlawful firearms trafficking frequently communicate with prospective sellers or buyers via cellular telephones either by text messages or telephone calls, and cellular devices retain evidence of such communications

long after conversation or communication has occurred.

g. For any computer hardware, computer software, cellular phones, or storage media called for by this warrant or that might contain things otherwise called for by this warrant ("the computer equipment"):

  i. evidence of who used, owned, or controlled the computer equipment;
  ii. evidence of the presence or absence of malicious software that would allow others to control the items, and evidence of the presence or absence of security software designed to detect malicious software;
  iii. evidence of the attachment of other computer hardware or storage media;
  iv. evidence of counter-forensic programs and associated data that are designed to eliminate data;
  v. evidence of when the computer equipment was used;
  vi. passwords, encryption keys, and other access devices that may be necessary to access the computer equipment;
  vii. records and tangible objects pertaining to accounts held with companies providing Internet access or remote storage; and
  viii. records evidencing the use of the Internet Protocol addresses to communicate over the Internet.

II. all computer hardware, computer software, and storage media, including cell phones or other devices that are or were previously assigned call number (401) 952-9884 or (401) 744-9705. Off-site searching of these items shall be limited to searching for the items described in paragraph I.

## BIOMETRIC ACCESS TO DEVICES

During the execution of the search of the locations described in Attachment A, law enforcement personnel are also specifically authorized to compel Lucas SORIANO and Rafael SORIANO to provide biometric features, including pressing fingers (including thumbs) against and/or putting a face before the sensor, or any other security feature requiring biometric recognition, of:

i.      the SUBJECT PHONES or any electronic devices found at 70/72 Osborn Street Apartment 3 Providence RI, 02908 or25 Chatham Street, Apartment 2 Providence RI, 02904, or in the SUBJECT VEHICLES, or on the person of Lucas or Rafael SORIANO;

ii.     where the SUBJECT PHONES or any electronic devices are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as described in the search warrant affidavit and warrant attachments, for the purpose of attempting to unlock the devices' security features in order to search the contents as authorized by this warrant.

This warrant does not authorize law enforcement personnel to compel any other individuals found at 70/72 Osborn Street Apartment 1 or Apartment 3, Providence RI, 02908, and 25 Chatham Street, Apartment 2, Providence RI, 02904 to provide biometric features, as described in the preceding paragraph, to access or otherwise unlock any device.  Further, this warrant does not authorize law enforcement personnel to request that either Lucas or Rafael SORIANO state or otherwise provide the password or any other means that may be used to unlock or access the SUBEJCT PHONES or any electronic device, including by identifying the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access said devices.

## DEFINITIONS

For the purpose of this warrant:

1. "Computer equipment" means any computer hardware, computer software, mobile phone, storage media, and data.

2. "Computer hardware" means any electronic device capable of data processing (such as a computer, smartphone, cell/mobile phone, or wireless communication device); any peripheral input/output device (such as a keyboard, printer, scanner, monitor, and drive intended for removable storage media); any related communication device (such as a router, wireless card, modem, cable, and any connections), and any security device, (such as electronic data security hardware and physical locks and keys).

3. "Computer software" means any program, program code, information or data stored in any form (such as an operating system, application, utility, communication and data security software; a log, history or backup file; an encryption code; a username; or a password), whether stored deliberately, inadvertently, or automatically.

4. "Storage media" means any media capable of collecting, storing, retrieving, or transmitting data (such as a hard drive, CD, DVD, or memory card).

5. "Data" means all information stored on storage media of any form in any storage format and for any purpose.

6. "A record" is any communication, representation, information or data. A "record" may be comprised of letters, numbers, pictures, sounds or symbols, and shall include any form of computer or electronic storage (such as flash memory or other media that can store data and any photographic form). including email, text messaging, instant messaging, or other communications, and including any content that may be synchronized to or on the device from any service or application utilized by the subject all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored.

## **RETURN OF SEIZED COMPUTER EQUIPMENT**

If the owner of the seized computer equipment requests that it be returned, the government will attempt to do so, under the terms set forth below.

If, after inspecting the seized computer equipment, the government determines that some or all of this equipment does not contain contraband or the passwords, account information, or personally-identifying information of victims, and the original is no longer necessary to retrieve and preserve as evidence, fruits or instrumentalities of a crime, the equipment will be returned within a reasonable time, if the party seeking return will stipulate to a forensic copies authenticity (but not necessarily relevancy or admissibility) for evidentiary purposes.

If computer equipment cannot be returned, agents will make available to the computer system's owner, within a reasonable time period after the execution of the warrant, copies of files that do not contain or constitute contraband; passwords, account information, or personally-identifying information of victims; or the fruits or instrumentalities of crime.

For purposes of authentication at trial, the Government is authorized to retain a digital copy of all computer equipment seized pursuant to this warrant for as long as is necessary for authentication purposes.